# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

| | |
|---|---|
| IN RE: MCP 191 | No. 24-8028 |
| DIRECT ACTION FOR RIGHTS AND EQUALITY, INC., *Petitioner*, v. FEDERAL COMMUNICATIONS COMMISSION; UNITED STATES, *Respondents*, SECURUS TECHNOLOGIES, LLC, *Intervenor (No. 24-1884).* | Nos. 24-1814 & 24-1884 |
| CRIMINAL JUSTICE REFORM CLINIC, *Petitioner*, v. FEDERAL COMMUNICATIONS COMMISSION; UNITED STATES, *Respondents*, SECURUS TECHNOLOGIES, LLC, *Intervenor (No. 24-1992).* | Nos. 24-1859 & 24-1922 |

| | |
|---|---|
| SECURUS TECHNOLOGIES, LLC,<br><br>*Petitioner*,<br><br>GLOBAL TEL*LINK d/b/a VIAPATH TECHNOLOGIES,<br><br>*Intervenor*,<br><br>v.<br><br>FEDERAL COMMUNICATIONS COMMISSION; UNITED STATES,<br><br>*Respondents*,<br><br>DIRECT ACTION FOR RIGHTS AND EQUALITY, INC.; CRIMINAL JUSTICE REFORM CLINIC; PENNSYLVANIA PRISON SOCIETY; OFFICE OF COMMUNICATION OF THE UNITED CHURCH OF CHRIST, INC.,<br><br>*Intervenors.* | Nos. 24-1860 & 24-1927 |
| PENNSYLVANIA PRISON SOCIETY,<br><br>*Petitioner*,<br><br>v.<br><br>FEDERAL COMMUNICATIONS COMMISSION; UNITED STATES,<br><br>*Respondents*,<br><br>SECURUS TECHNOLOGIES, LLC,<br><br>*Intervenor (No. 24-1886).* | Nos. 24-1861 & 24-1886 |

| | |
|---|---|
| PAY TEL COMMUNICATIONS, INC., <br> *Petitioner*, <br> GLOBAL TEL*LINK d/b/a VIAPATH TECHNOLOGIES, <br> *Intervenor*, <br> v. <br> FEDERAL COMMUNICATIONS COMMISSION; UNITED STATES, <br> *Respondents*, <br> DIRECT ACTION FOR RIGHTS AND EQUALITY, INC.; PENNSYLVANIA PRISON SOCIETY; OFFICE OF COMMUNICATION OF THE UNITED CHURCH OF CHRIST, INC., <br> *Intervenors.* | No. 24-1969 |
| STATE OF INDIANA; STATE OF ARKANSAS; STATE OF ALABAMA; STATE OF FLORIDA; STATE OF GEORGIA; STATE OF IDAHO; STATE OF IOWA; STATE OF MISSOURI; STATE OF OHIO; STATE OF SOUTH CAROLINA; STATE OF SOUTH DAKOTA; STATE OF TENNESSEE; STATE OF UTAH; STATE OF VIRGINIA, <br> *Petitioners*, <br> GLOBAL TEL*LINK d/b/a VIAPATH TECHNOLOGIES, <br> *Intervenor*, <br> v. <br> FEDERAL COMMUNICATIONS COMMISSION; UNITED STATES, <br> *Respondents*, <br> DIRECT ACTION FOR RIGHTS AND EQUALITY, INC.; PENNSYLVANIA PRISON SOCIETY; OFFICE OF COMMUNICATION OF THE UNITED CHURCH OF CHRIST, INC., <br> *Intervenors.* | No. 24-2013 |

| | |
|---|---|
| STATE OF LOUISIANA; STATE OF MISSISSIPPI; STATE OF TEXAS; SHERIFF SID GAUTREAUX; SHERIFF BOBBY WEBRE; SHERIFF MARK WOOD; SHERIFF KEVIN COBB; LOUISIANA SHERIFFS' ASSOCIATION,<br><br>*Petitioners*,<br><br>GLOBAL TEL*LINK d/b/a VIAPATH TECHNOLOGIES; NATIONAL SHERIFFS' ASSOCIATION,<br><br>*Intervenors*,<br><br>v.<br><br>FEDERAL COMMUNICATIONS COMMISSION; UNITED STATES,<br><br>*Respondents*,<br><br>DIRECT ACTION FOR RIGHTS AND EQUALITY, INC.; PENNSYLVANIA PRISON SOCIETY; OFFICE OF COMMUNICATION OF THE UNITED CHURCH OF CHRIST, INC.,<br><br>*Intervenors.* | No. 24-2061 |

**RESPONDENTS' MOTION FOR ABEYANCE**

The Federal Communications Commission (FCC or Commission) and the United States respectfully request that the Court put this case in abeyance—with the FCC to file regular status reports during the course of the abeyance—while the agency considers whether to rescind or revise critical portions of the order under review.[1] After the Commission adopted the *Order*, several parties filed petitions

---

[1] *Incarcerated People's Communications Services; Implementation of the Martha Wright-Reed Act*, 39 FCC Rcd 7647 (JA1486) (rel. July 22, 2024, amended Aug. 26, 2024) (*Order*). Citations that begin with JA refer to the Joint Appendix submitted by the parties with merits briefing.

for agency reconsideration, and the agency has developed a more robust record in response to the further notice of proposed rulemaking released with the *Order*. The composition of the Commission has also changed in a material way. Placing this case into abeyance will conserve resources that this Court and the parties would otherwise expend to address issues that future FCC action may narrow, alter, or moot.

We have conferred with counsel for the other parties regarding this motion. The following Petitioners consent to this motion: Securus Technologies, LLC; Global Tel*Link d/b/a ViaPath Technologies; Pay Tel Communications, Inc.; National Sheriffs' Association; the States of Indiana, Arkansas, Louisiana, Alabama, Florida, Georgia, Idaho, Iowa, Mississippi, Missouri, Ohio, South Carolina, South Dakota, Tennessee, Texas, Utah, and Virginia; Sheriffs Sid Gautreaux, Bobby Webre, Mark Wood, and Kevin Cobb; and the Louisiana Sheriffs' Association. The following Petitioners oppose this motion: Direct Action for Rights and Equality, Inc.; Criminal Justice Reform Clinic; Pennsylvania Prison Society; and Office of Communication of the United Church of Christ, Inc.

## BACKGROUND

In the challenged *Order*, adopted in July 2024, the Commission set out new rules for the voice and video communication services used by inmates in prisons and jails, known as incarcerated people's communications services, or IPCS. In

2

part to implement recent legislation—the Martha Wright-Reed Just and Reasonable Communications Act of 2022, Pub. L. No. 117-338, 136 Stat. 6156 (2023)—the Commission (1) set new, lower rate caps for voice IPCS; (2) set rates for video IPCS for the first time; (3) determined which "safety and security" costs should be included as costs in setting rates; (4) barred most payments from IPCS providers to correctional facilities, known as "site commissions"; and (5) issued several other regulations related to these reforms.

**1.** Parties representing IPCS providers, states and sheriffs, and public interest advocates filed petitions for review, which were consolidated in this Court. These petitions challenge many aspects of the *Order*, including the rate caps, treatment of safety and security costs, and the banning of site commissions. *See* Resp. Br. at 4–6 (issues presented). Merits briefing in the case recently concluded, but no oral argument has been scheduled.

When the *Order* was approved, then-Commissioner Brendan Carr voted to approve in part and concur in part, expressing concerns that the rates adopted in the *Order* might prove too low to fully compensate some facilities, especially smaller jails, and might fail to cover certain necessary safety and security costs. JA1947. He explained that his decision to support the *Order* in part was contingent on, among other factors, the concurrent issuance of a further notice of proposed rulemaking (*Further Notice*). *Id.* The *Further Notice* sought comment on, among

3

other issues, a uniform fee-recovery additive to account for otherwise uncompensated costs. *See Order* ¶¶ 621–622 (JA1802–1803). It also sought additional data on variable costs of very small jails. *See id.* ¶ 612 (JA1799). The FCC has since received comments and other filings addressing the issues raised in the *Further Notice*.

Whereas some IPCS providers sought judicial review of the *Order*, others instead filed petitions for agency reconsideration with the Commission. NCIC Correctional Services, for example, asked the Commission to reconsider its treatment of safety and security costs as well as of site commissions. *See* NCIC Correctional Services, Petition for Reconsideration, WC Docket Nos. 23-62 and 12-375 (Oct 21, 2024). The agency received several comments in response to these petitions.

**2.** Since the *Order* was adopted in July 2024, the composition of the FCC has materially changed. First, with the change in Presidential administration, former Commissioner Carr was named Chairman, and his predecessor departed. On June 6, 2025, two more Commissioners (who both voted to approve the *Order*) departed, and on June 23, 2025, Commissioner Olivia Trusty was sworn in. As a result, the FCC now has three sitting members, only one of whom (Commissioner Gomez) voted to approve the *Order* in full.

**3.** On June 30, 2025, the FCC's Wireline Competition Bureau issued an order, temporarily waiving the deadlines to comply with the rate cap, site commission, and per-minute pricing rules adopted in the *Order*. *Incarcerated People's Communications Services; Implementation of the Martha Wright-Reed Act*, DA-25-565, ¶ 1 (Wireline Comp. Bur., June 30, 2025) (attached as App. A) (*Waiver Order*). The waiver will last until April 1, 2027, or any "alternative date the Commission sets as part of further action" in the IPCS proceeding. *Id.*

The Bureau explained that a waiver was warranted because the record now indicated that the new IPCS rules "impose[] implementation challenges and safety and security risks greatly exceeding those the Commission envisioned in the [*Order*]," ultimately "leading to the curtailment of IPCS." *Id.* ¶ 5. Among other issues, the Bureau described evidence of "financial hurdles" for facilities "that far exceed those the Commission anticipated in the [*Order*]." *Id.* ¶ 12. For example, the new rules allow for providers to compensate facilities for certain costs from the provision of IPCS, but commenters describe the mechanism as "poorly defined" and "unworkable," potentially leading to a reduction in service. *Id.*

The *Waiver Order* shows that the Commission is actively considering whether to change the rules at issue in this litigation. For example, the Bureau explained that the waiver would "mitigate…unintended consequences while the Commission assesses whether to reconsider…aspects" of the *Order*, including the

5

rate caps and site commission rules. *Id.* ¶ 16. The waiver would also "allow the Commission to develop a more robust record on the issues and proposals it sought comment on in" the *Further Notice*. *Id.* ¶ 18. That record would in turn "inform future Commission action on these issues." *Id.*

## ARGUMENT

Courts "often hold a petition for review in abeyance pending the FCC's further proceedings" on related issues. *Teledesic LLC v FCC*, 275 F.3d 75, 83 (D.C. Cir. 2001); *see Atieh v. Riordan*, 727 F.3d 73, 75 (1st Cir. 2013) (district court "wisely held [petition for review] in abeyance" pending agency disposition of renewed administrative petition); *Craker v. DEA*, 714 F.3d 17, 25 (1st Cir. 2013); *Pereira v. Garland*, No. 23-1209, 2023 WL 8825104, at *1 (1st Cir. Dec. 18, 2023) (holding case in abeyance pending further proceedings before the Board of Immigration Appeals). Abeyance promotes "judicial economy," *Craker*, 714 F.3d at 25, because further agency proceedings may affect or even moot pending petitions, *see Teledesic*, 275 F.3d at 83 (noting that FCC action on petitions for reconsideration had mooted two issues by the time of oral argument).

Abeyance is warranted here. As the *Waiver Order* makes clear, the Commission is "assess[ing] whether to . . . reconsider[] critical aspects of the" *Order*, *Waiver Order* ¶ 1, including the rate caps, the safety and security costs that are included in those caps, and the treatment of site commissions—issues central to

6

the challenges now before the Court. If these rules change, the arguments now before the Court may be partly or entirely mooted.

The Commission's ability (as a practical matter) to revisit these rules, and its stated interest in doing so, are very recent developments. And Respondents acted quickly to notify the Court and the parties once those developments materialized: its newest member was confirmed just last week, and the Bureau issued the *Waiver Order* just yesterday. At the same time, the record before the agency has continued to develop, and the recent *Waiver Order* indicates this new evidence may justify reevaluating aspects of the *Order*. *See, e.g.*, *Waiver Order* ¶¶ 4, 7–11.

Holding this case in abeyance will allow the Commission to consider amending the rules adopted in the *Order*, while sparing this Court and the parties further effort to address issues arising from the *Order* that may ultimately be moot. We propose that, if the Court agrees to place this case into abeyance, the FCC be required to file status reports at 90-day intervals to keep the Court and the parties apprised of future developments in the agency's rulemaking docket.

# CONCLUSION

The Court should hold this case in abeyance pending further final FCC action regarding rules for the IPCS market, and direct the Commission to file status reports at 90-day intervals during the abeyance period.

| | |
|---|---|
| July 1, 2025 | Respectfully submitted, |
| | /s/ Matthew J. Dunne |
| Robert B. Nicholson<br>Robert J. Wiggers<br>*Attorneys*<br>U.S. DEPARTMENT OF JUSTICE<br>ANTITRUST DIVISION<br>950 Pennsylvania Ave. NW<br>Washington, DC 20530<br><br>*Counsel for Respondent*<br>*United States of America* | D. Adam Candeub<br>*General Counsel*<br><br>Bradley Craigmyle<br>*Deputy General Counsel*<br><br>Sarah E. Citrin<br>*Deputy Associate General Counsel*<br><br>Matthew J. Dunne<br>*Counsel*<br><br>FEDERAL COMMUNICATIONS<br>COMMISSION<br>45 L Street NE<br>Washington, DC 20554<br>(202) 418-1740<br>fcclitigation@fcc.gov<br><br>*Counsel for Respondent Federal*<br>*Communications Commission* |

8

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements and Type Style Requirements

1. This document complies with the type-volume limit of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

    ☒ this document contains <u>1,454</u> words, *or*

    ☐ this document uses a monospaced typeface and contains ___ lines of text.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    ☒ this document has been prepared in a proportionally spaced typeface using <u>Microsoft Word in Office 365</u> in <u>14-point Times New Roman</u>, *or*

    ☐ this document has been prepared in a monospaced spaced typeface using _____ with _____.

<u>/s/ Matthew J. Dunne</u>

Matthew J. Dunne
Counsel

Federal Communications Commission
Washington, D.C.  20554
(202) 418-1740