# APPENDIX A

**Before the**
**Federal Communications Commission**
**Washington, D.C. 20554**

| In the Matter of | ) | |
|---|---|---|
| | ) | |
| Incarcerated People's Communications Services; | ) | WC Docket No. 23-6 |
| Implementation of the Martha Wright-Reed Act | ) | |
| | ) | |
| Rates for Interstate Inmate Calling Services | ) | WC Docket No. 12-375 |

# ORDER

**Adopted: June 30, 2025** **Released: June 30, 2025**

By the Chief, Wireline Competition Bureau:

## I. INTRODUCTION

1. By this Order, the Wireline Competition Bureau (Bureau) extends the deadlines by which IPCS providers must comply with certain rules adopted in the *2024 IPCS Order* until April 1, 2027 or any alternative date the Commission sets as part of further action in the incarcerated people's communications servic s (IPCS) proceeding.[1] Specifically, we temporarily waive the deadlines for complying with the rate cap, site commission, and per-minute pricing rules adopted in the *2024 IPCS Order* to ensure sufficient funding for safety and security tools, while IPCS providers and the facilities they serve address the challenges of implementing these requirements.[2] As discussed below, these ongoing implementation challenges and the resulting risks to safety and security greatly exceed what the Commission considered or anticipated when it adopted the *2024 IPCS Order*. Our action here is intended to preserve correctional officials' ability to provide safe and secure access to IPCS while the Commission assesses whether to take further action it deems necessary as it continues to reevaluate its IPCS rules in light of these unanticipated and ongoing challenges—including reconsidering critical aspects of the 2024 IPCS Order.

## II. BACKGROUND

2. The *2024 IPCS Order* promulgated rules that expanded the Commission's regulation of IPCS in response to the Martha Wright-Reed Just and Reasonable Communications Act of 2022 (Martha Wright-Reed Act).[3] The Martha Wright-Reed Act amended the Communications Act of 1934, as amended (Communications Act), to require that the Commission "establish a compensation plan to ensure that all [IPCS] providers are fairly compensated, and all rates and charges are just and reasonable, for

---

[1] *Implementation of the Martha Wright-Reed Act; Rates for Interstate Inmate Calling Services*, WC Docket Nos. 23-62, 12-375, Report and Order, Order on Reconsideration, Clarification and Waiver, and Further Notice of Proposed Rulemaking, 39 FCC Rcd 7647 (2024) (*2024 IPCS Order* or *2024 IPCS Notice*).

[2] 47 CFR §§ 64.6010, 64.6015, 64.6080.

[3] Martha Wright-Reed Just and Reasonable Communications Act of 2022, Pub. L. No. 117-338, 136 Stat. 6156 (2022) (Martha Wright-Reed Act).

completed" IPCS communications.[4] Pursuant to this Congressional mandate, in the *2024 IPCS Order*, the Commission revised its IPCS rules by, among other actions:

- Reducing the per-minute rate caps for interstate and international audio IPCS, adopting permanent rate caps for intrastate audio IPCS, and establishing, for the first time, interim per-minute rate caps for video IPCS;[5]
- Prohibiting providers from making site commission payments associated with IPCS;[6] and
- Extending its per-minute pricing rule, which previously had been enforceable only with regard to interstate and international audio IPCS, to also apply to intrastate audio IPCS and to video IPCS.[7]

The rules adopted in the *2024 IPCS Order*, other than those subject to Office of Management and Budget (OMB) review under the Paperwork Reduction Act, took effect on November 19, 2024, 60 days after publication in the Federal Register.[8] The Commission, however, permitted IPCS providers to comply with its new rate cap rules and its prohibition against site commissions on a staggered basis, beginning as early as January 1, 2025 and ending no later than April 1, 2026.[9]

3. In adopting the staggered compliance deadlines for its new rate caps and its prohibition against site commissions, the Commission attempted to balance the reforms contemplated by the Martha Wright-Reed Act with the need to give IPCS providers and correctional facilities sufficient time to adapt to the new rules.[10] The Commission specifically recognized that, as a general matter, its new rate cap and site commission rules would require that IPCS providers, governmental officials, and correctional officials renegotiate their IPCS-related contracts.[11] The Commission also recognized that, where providers were required to pay legally mandated site commissions, state and local officials would have to amend laws and regulations requiring such payments.[12] The staggered compliance deadlines reflected the Commission's predictions regarding how long these processes would take and how factors such as facility type (prison vs. jail), facility size as measured by average daily population, and contract expiration date might affect implementation timelines.[13]

---

[4] 47 U.S.C. § 276(b)(1)(A). The Martha Wright-Reed Act also amended the Communications Act to include video communications among the types of IPCS subject to the Commission's jurisdiction. *See* Martha Wright-Reed Act §§ 2(a)(2), (b); 47 U.S.C. §§ 153(1)(D)-(E); 276(d).

[5] 47 CFR § 64.6010(b)-(c), (e); *see also 2024 IPCS Order*, 39 FCC Rcd at 7649-50, paras. 3-4.

[6] 47 CFR § 64.6015; *see also 2024 IPCS Order*, 39 FCC Rcd at 7650, 7777-78, paras. 3, 242-45.

[7] 47 CFR § 64.6010(a). As amended by the *2024 IPCS Order*, this rule requires that providers offer each of their incarcerated people's communications services at per-minute rates.

[8] *See 2024 IPCS Order*, 39 FCC Rcd at 7950, 7954, 7968, paras. 587, 595, 641; *Wireline Competition Bureau Announces Effective Dates of 2024 Incarcerated People's Communications Services Order and Comment Dates for 2024 Incarcerated People's Communications Services Further Notice of Proposed Rulemaking*, WC Docket Nos. 23-62; 12-375, Public Notice, DA 24-969, at 1 (WCB Sept. 20, 2024) (*IPCS Effective Date Notice*).

[9] *See 2024 IPCS Order*, 39 FCC Rcd at 7950-51, para. 587; 47 CFR §§ 64.6010, 64.6015; *IPCS Effective Date Notice*.

[10] *2024 IPCS Order*, 39 FCC Rcd at 7951-53, paras. 588-93.

[11] *Id*. at 7951, para. 588. For example, the Commission generally acknowledged that some providers would need to shift their video systems from flat-rate billing to per-minute billing. *Id*. at 7709-10, 7883-84, paras. 124-24, 443 (setting rates on a per-minute basis for both audio and video IPCS, and acknowledging that some providers offer video calling on a flat-rate basis).

[12] *Id*. at 7951, para. 588.

[13] *Id*. at 7951-53, paras. 588-93.

4. In the time since the *Order* was adopted, the Commission has been made aware of potential consequences of the new rules, as described below. In the *2024 IPCS Notice*, the Commission solicited comment on a number of issues, including whether and how to disaggregate the very small jail tier, whether to adopt an additive to account for correctional facility costs, and the effect of the new rules on small entities.[14] Further, NCIC Inmate Communications also filed a Petition for Reconsideration, seeking reconsideration of the elimination of cost recovery for five safety and security categories, and of the elimination of site commissions, *inter alia*.[15]

5. As set forth more fully below, the rulemaking record now contains evidence indicating that the "radical restructur[ing]" of the IPCS industry required to implement the Commission's new rate cap and site commission rules imposes implementation challenges and safety and security risks greatly exceeding those the Commission envisioned in the *2024 IPCS Order*.[16] These additional challenges arise from developing and implementing new IPCS systems to allow per-minute billing and to accommodate the several rate tiers for both audio and video IPCS adopted in the *2024 IPCS Order*. Several providers have reported that, despite their best efforts, they have been or will be unable to implement the necessary system updates by the deadlines adopted in the *2024 IPCS Order*, with concomitant risks to safety and security. These challenges also arise from the complexity (and resulting costs) of the contract renegotiation process, as well as the need for state and local officials to ensure that the new contracts do not take effect until alternative sources of funding are in place for correctional facility costs that were previously funded through site commissions. The record indicates that correctional facilities have been or will be unable to overcome these financial challenges within the timeframe established by the *2024 IPCS Order*, leading to the curtailment of IPCS.[17]

## III. DISCUSSION

6. We find good cause to temporarily waive the deadlines for implementing the rate cap, site commission, and per-minute pricing rules adopted in the *2024 IPCS Order* for all IPCS providers.[18] The Commission may waive its rules "on its own motion or on petition" for good cause shown.[19] The Commission may exercise its discretion to waive a rule where the particular facts make strict compliance inconsistent with the public interest.[20] In addition, the Commission may take into account considerations of hardship, equity, or more effective implementation of overall policy on an individual basis.[21] Waiver of the Commission's rules is appropriate if both (i) special circumstances warrant a deviation from the general rule and (ii) such deviation will serve the public interest.[22] We find that such special circumstances exist and that it would serve the public interest to temporarily waive the deadlines for

---

[14] *Id*. at 7960, 7963-64, paras. 612, 621–23.

[15] Petition for Reconsideration of NCIC Inmate Communications, WC Docket Nos. 23-62; 12-375, at 1 (filed Oct. 21, 2024) (NCIC Recon. Petition).

[16] Letter from Michael Pryor, Counsel for Securus Technologies, LLC, and Marcus Trathen, Counsel for Pay Tel, Inc., to Marlene H. Dortch, Secretary, FCC, WC Docket Nos. 23-62 and 12-375 (filed Apr. 3, 2025) (Securus and Pay Tel Apr. 3, 2025 *Ex Parte*); Letter from Michael J. Lozich, Associate General Counsel, Regulatory Affairs, Securus Technologies, LLC, to Marlene H. Dortch, Secretary, FCC WC Docket Nos. 23-62 and 12-375 (filed June 27, 2025 (Securus June 27, 2025 *Ex Parte*) (stating that the industry is "straining to implement" some of the requirements adopted in the *2024 IPCS Order*).

[17] *See, e.g.*, Securus and Pay Tel Apr. 3, 2025 *Ex Parte* at 3-4; Securus June 27, 2025 *Ex Parte* at 2.

[18] *See 2024 IPCS Order*, 39 FCC Rcd at 7976-78, 7981; *see* 47 CFR §§ 64.6010, 64.6015, 64.6080.

[19] 47 CFR § 1.3.

[20] *Northeast Cellular Tel. Co. v. FCC*, 894 F.2d 1164, 1166 (D.C. Cir. 1990) (*Northeast Cellular*).

[21] *WAIT Radio v. FCC*, 418 F.2d 1154, 1159 (D.C. Cir. 1969); *Northeast Cellular*, 897 F.2d at 1166.

[22] *Northeast Cellular*, 897 F.2d at 1166.

compliance with the rate cap, site commission, and per-minute pricing rules until April 1, 2027 or any alternative date the Commission sets as part of further action in the IPCS proceeding.[23] Doing so will (among other things) preserve correctional officials' ability to provide safe and secure access to IPCS while the Commission considers reevaluating aspects of the *2024 IPCS Order*.

**A. Special Circumstances Warranting a Waiver**

**1. Implementation Challenges**

7. First, we find that providers and facilities have established that they face unanticipated and ongoing challenges in providing safe and secure access to IPCS while implementing the rate cap, site commission, and per-minute pricing rules adopted in the *2024 IPCS Order*. We find that these challenges constitute special circumstances that warrant a deviation from the Commission's rules.

8. In the *2024 IPCS Order*, the Commission observed that "IPCS providers, governmental officials, and correctional officials may need additional time beyond January 1, 2025 or April 1, 2025 (depending on the type of facility and the terms of the contract) to renegotiate contracts" or "to amend state or local laws and regulations" in response to the reforms adopted therein.[24] Consequently, the Commission adopted staggered compliance dates for the rate cap and site commission reforms, which it found "strike[] a reasonable balance between [] competing interests" and would "allow IPCS providers and correctional facilities sufficient time to adapt" to the new rules.[25]

9. However, these staggered compliance deadlines did not fully account for nor fully anticipate the challenges faced by IPCS providers, state and local officials, and correctional facilities. Since the adoption of the *2024 IPCS Order*, several IPCS providers have attested that they face substantial burdens in complying with the new rate cap and site commission rules within the adopted timeframes.[26] For example, several parties have observed that these rules have complicated the contracting and negotiation process with carceral facilities, introducing substantial administrative costs.[27]

[23] The waiver of the deadlines for compliance with the rate cap and site commission reforms encompasses the alternative conditional compliance dates in sections 64.6010(d)(1)-(2) and 64.6015(b)-(c). 47 CFR §§ 64.6010(d)(1)-(2), 64.6015(b)-(c).

[24] *2024 IPCS Order*, 39 FCC Rcd at 7951, para. 588.

[25] *Id*., para. 589.

[26] *See, e.g.*, Petition of Talton Communications, Inc. for Waiver of Certain IPCS Regulatory Requirements, WC Docket Nos. 23-62, 12-375, at 3-6 (filed Mar. 10, 2025) (Talton Waiver Petition); Securus and Pay Tel Apr. 3, 2025 *Ex Parte* at 3-6; Letter from Lee G. Petro and Glenn S. Richards, Counsel to NCIC Correctional Services, to Marlene H. Dortch, Secretary, FCC, WC Docket Nos. 23-62, 12-375, at 1 (filed Jan. 9, 2025) (NCIC Jan. 9, 2025 *Ex Parte*); Letter from Lee G. Petro and Glenn S. Richards, Counsel to NCIC Correctional Services, to Marlene H. Dortch, Secretary, FCC, WC Docket Nos. 23-62, 12-375, at 1 (filed Mar. 6, 2025) (NCIC Mar. 6, 2025 *Ex Parte*); Letter from Marcus W. Trathen, Counsel to Pay Tel Communications, Inc., to Marlene H. Dortch, Secretary, FCC, WC Docket Nos. 23-62, 12-375, at 1 (filed Mar. 7, 2025) (Pay Tel Mar. 7, 2025 *Ex Parte*).

[27] *See* Securus and Pay Tel Apr. 3, 2025 *Ex Parte* at 5 (observing that the *2024 IPCS Order* "introduced chaos into the negotiation and contracting process"); *id.* at 2 (arguing that the *2024 IPCS Order* overestimated correctional facilities' ability to "quickly and easily find the necessary appropriations to fund" services previously offered by IPCS providers); Letter from Lee G. Petro and Glenn S. Richards, Counsel to NCIC Correctional Services, to Marlene H. Dortch, Secretary, FCC, WC Docket Nos. 23-62, 12-375, at 4 (filed July 10, 2024) (NCIC July 10, 2024 *Ex Parte*) (arguing that the reforms adopted in the *2024 IPCS Order* "will likely lead to the renegotiation of approximately 3,000 contracts"); Letter from Salvatore Taillefer, Jr., Counsel to the National Sheriffs' Association, to Marlene H. Dortch, Secretary, FCC, WC Docket Nos. 23-62, 12-375, at 2 (filed July 11, 2024) (arguing that the implementation timeline adopted in the *2024 IPCS Order* will require contract renegotiation that "will cast further uncertainty and chaos into state and local budgeting processes"); Letter from Michael H. Pryor, Counsel to Securus Technologies, LLC, to Marlene H. Dortch, Secretary, FCC, WC Docket Nos. 23-62, 12-375, at 26 (filed July 15, 2024) (Securus July 15, 2024 *Ex Parte*) (arguing that the contract renegotiation process "likely cannot even begin before state and local governments sort out" various budget issues generated by the reforms adopted in the *2024*

(continued….)

Case: 24-2013 Document: 00118307715 Page: 6 Date Filed: 07/01/2025 Entry ID: 6732864



Providers have further attested that, under these rules, they are being required to "completely restructure" their services and the systems used to provide them—in some cases, ceasing provision of IPCS as a result.[28] We find that these challenges constitute special circumstances warranting a temporary waiver of the Commission's deadlines for complying with the rate cap and site commission rules.

10. Providers have raised similar concerns with implementing the rule requiring per-minute pricing for video IPCS. Indeed, two providers have submitted petitions seeking waiver of the per-minute pricing rule for video IPCS, citing challenges with updating their billing systems within the period allotted by the *2024 IPCS Order*.[29] Both TKC and Securus have argued that that, despite their best efforts to complete the necessary updates to their IPCS platforms, they could not achieve compliance by the deadline originally set by the Commission.[30] TKC asserted that, as a result of the implementation schedule adopted by the Commission, it would need to "modify and maintain at least three different versions" of its video IPCS billing software, significantly increasing its administrative costs.[31] Meanwhile, in December 2024, Securus estimated that the migration process for its video IPCS platforms



(Continued from previous page)
*IPCS Order*); Securus June 27, 2025 *Ex Parte* at 3 (explaining that Securus's "observations from the last year and review of RFP submissions indicate (at best) mass confusion about how to interpret the Order's requirements").

[28] *See* Talton Waiver Petition at 3-4 (asserting that, to comply with the rate cap rules, Talton must newly establish a multitude of different billing systems, which "poses a significant administrative burden"); Talton Waiver Petition at 2-3, 6 (arguing that the rate caps do not account for Talton's costs of providing *pro bono* services, which entails costs of {[ ]}); Securus and Pay Tel Apr. 3, 2025 *Ex Parte* at 5 ("Providers are being required to completely restructure their product offerings and customer contracts . . . .").

We distinguish claims that certain providers may be forced to operate below cost. *See, e.g.*, Letter from Marcus W. Trathen, Counsel to Pay Tel Communications, Inc., to Marlene H. Dortch, Secretary, FCC, WC Docket Nos. 23-62. 12-375, at 4-5 (filed July 9. 2024) (Pay Tel July 9, 2024 *Ex Parte*) (arguing that the *2024 IPCS Order* "set[s] rate caps below Pay Tel's demonstrated costs for every service tier," and that "Pay Tel would only be able to recover its costs at about one-third of the facilities it currently serves"); Pay Tel Mar. 7, 2025 *Ex Parte* at 1 (citing its decision to end service at "four small facilities in Arizona and New Mexico" which it claims would no longer be "financially viable under the new rules"); Securus July 15, 2024 *Ex Parte* at 4 (arguing that "some providers may be forced out of business entirely"); Letter from Marcus W. Trathen, Counsel to Pay Tel Communications, Inc., to Marlene H. Dortch, Secretary, FCC, WC Docket Nos. 23-62. 12-375, at 2 (filed July 11, 2024) (arguing that "13 out of 21 providers (62%) will not recover costs under the proposed rates"); NCIC Jan. 9, 2025 *Ex Parte* at 1 (arguing that the IPCS rate cap rules "result in NCIC providing service below its actual costs at more than half of its facilities"); *but see* Letter from Gregory R. Capobianco, Counsel to The Wright Petitioners, to Marlene H. Dortch, Secretary, FCC, WC Docket Nos. 23-62, 12-375, at 3, Attach. at 3 (filed Apr. 10, 2025) (Wright Petitioners Apr. 10, 2025 *Ex Parte*) (concluding that {[ ]}). Such claims are a consequence of industry-average ratemaking, and were raised and addressed in the *2024 IPCS Order*. *See 2024 IPCS Order*, 39 FCC Rcd at 7711-13, 7766-67, paras. 127-28 (addressing the use of industry average cost in ratemaking), 216-18 (discussing commercial viability and concluding that "our rate caps do not threaten providers' financial integrity such that they could be considered confiscatory, even in those anomalous circumstances where a provider cannot recover its costs under our rate caps").

[29] *See, e.g.*, Petition of Securus Technologies, LLC for Waiver to Extend the Compliance Date for 47 C.F.R. § 64.6080 as Applied to Video Calling Services, WC Docket No. 23-62 (filed Dec. 6, 2024) (Securus Waiver Petition); Petition of TKC Telecom, LLC for a Temporary Waiver to Extend the Compliance Date for 47 C.F.R. §§ 64.6010 and 64.6080 as Applied to Video IPCS, WC Docket No. 23-62 (filed May 21, 2025) (TKC Waiver Petition).

[30] *See Incarcerated People's Communications Services; Implementation of the Martha Wright-Reed Act; Rates for Interstate Inmate Calling Services*, WC Docket Nos. 23-62, 12-375, Order, DA 25-515, at 3-4 (WCB June 13, 2025) (*TKC Waiver Order*); *Incarcerated People's Communications Services; Implementation of the Martha Wright-Reed Act; Rates for Interstate Inmate Calling Services*, WC Docket Nos. 23-62 and 12-375, Order, DA 24-1277, at 4 (WCB Dec. 19, 2024) (*Securus Waiver Order*).

[31] TKC Waiver Petition at 3-4.

"would cost an estimated {[ ]}" and entail "{[ ]}," as well as attendant contract renegotiations, which altogether would "not be complete until {[ ]} at the earliest."[32]

11. More recently, Securus underscored the ongoing nature of the implementation challenges it faces to comply with the per-minute pricing rule for video IPCS.[33] Securus reported the additional time and resources it has devoted to complying with the rule, noting that it has already spent "approximately {[ ]} IT hours developing the new platform," with {[ ]} such that it would not be able to finish deploying its new video calling platform before April 1, 2026 at the earliest.[34] Given that Securus faces these continuing implementation challenges despite its relatively large resources, scale, and considerable in-house expertise, we anticipate that other providers—virtually all of which have significantly fewer resources—are facing even greater difficulties in complying with these requirements by the deadlines set forth in the *2024 IPCS Order*. We find that these challenges constitute special circumstances warranting a waiver of the per-minute pricing rule for video IPCS adopted in the *2024 IPCS Order*.[35]

### 2. Financial Burdens

12. The record likewise indicates that facilities themselves are facing financial hurdles that far exceed those the Commission anticipated in the *2024 IPCS Order*, and that the rules and timeframes adopted in the *2024 IPCS Order* threaten both the continued provision of IPCS and correctional officials' ability to fully fund all the safety and security measures that were previously implemented at their facilities.[36] Although the *2024 IPCS Order* provides for a reimbursement mechanism which allows facilities to recover any costs used and useful in the provision of IPCS, commenters have found this mechanism "poorly defined" and "unworkable."[37] NCIC suggests that this mechanism has introduced

---

[32] Securus Waiver Petition at 3, 5-6.

[33] Letter from Michael H. Pryor, Counsel for Securus Technologies, LLC, to Marlene H. Dortch, Secretary, FCC, WC Docket Nos. 23-62, 12-375 (filed June 23, 2025) (Securus June 23, 2025 *Ex Parte*) (explaining that while Securus was making progress in its efforts to comply with the Commission's rules, it would need more time to comply beyond the initial one year waiver already granted); *see also* TKC Waiver Petition. As recently demonstrated in Securus's June 23, 2025 *ex parte* and TKC's May 21, 2025 waiver petition, providers are facing ongoing challenges in adapting existing systems and developing new systems to comply with the rules.

[34] Securus June 23, 2025 *Ex Parte* at 1-4 (explaining that in order to comply, Securus has had to "stand up an entirely new platform" in addition to two other video calling platforms, development of which is taking longer than expected. "Securus now estimates that it will not be able to fully deploy the new per-minute billing video calling platform to every facility before at least April 1, 2026.").

[35] During the period of the temporary waiver, the per-minute pricing requirement remains in place for interstate and international audio IPCS, as originally established in the *2015 ICS Order*. *Rates for Inmate Calling Services*, WC Docket No. 12-375, Second Report and Order and Third Further Notice of Proposed Rulemaking, 30 FCC Rcd 12924 (2015) (*2015 ICS Order*).

[36] *See, e.g.*, Statement of Commissioner Brendan Carr Approving In Part and Concurring In Part, *2024 IPCS Order*, 39 FCC Rcd at 8108 (warning of "negative unintended consequences, particularly for public safety"); Securus and Pay Tel Apr. 3, 2025 *Ex Parte* at 7 (stating that correctional facilities are having "to divert already-limited resources away from core elements of their public-safety mission"); Pay Tel July 9, 2024 *Ex Parte* at 15 ("Failure to permit facility cost recovery—coupled with non-compensatory IPCS rates—will lead to the reduction of service to incarcerated persons."); Letter from Derek Almarode, President, Virginia Assoc. of Regional Jails to Marlene H. Dortch, Secretary, FCC, WC Docket Nos. 23-62, 12-375, at 3 (filed July 11, 2024) (VARJ July 11, 2024 *Ex Parte*) (explaining that the Commission's actions increase "the financial challenges faced by regional jails");Securus June 27, 2025 *Ex Parte* at 2 (asserting that "at least 18" Securus customers "lack sufficient financial resources to pay for the suite of safety and security tools they previously relied upon to provide IPCS safely," and so are "mov[ing] forward with a substantially reduced set of those tools").

[37] Securus and Pay Tel Apr. 3, 2025 *Ex Parte* at 7.

"uncertainty" into the contracting process, which contributes to the financial difficulties faced by facilities.[38] As the National Sheriffs' Association explains, "eliminating the ability of IPCS providers and correctional facilities to negotiate elements of cost recovery" will "hamstring facilities' ability to recover even the limited costs associated with IPCS."[39] The record suggests that various facilities "have warned that the [*2024 IPCS Order*] will lead to a reduction in service due to lack of budgetary resources to pay for services previously funded by providers' regulated revenue from IPCS users."[40] To date, one facility has reported that it was forced to terminate access to IPCS due to the effects of the *2024 IPCS Order*.[41] Similarly, another provider expresses concern that the *2024 IPCS Order* may "lead to IPCS providers refusing to bid on high-cost, rural jails"[42] which could leave people incarcerated in those facilities and their families completely without access to IPCS.

13. As Securus and Pay Tel contend, the *2024 IPCS Order*'s limitations on "the use of voice and video calling revenues to sustain recording, monitoring, and other . . . public safety and services" that correctional officials deem essential has led some facilities to "reduc[e] or eliminat[e] access to video calling services due to the lack of funding for safety and security tools."[43] As Pay Tel and Securus explain, "providers cannot fund safety and security services out of regulated revenues, thus forcing correctional facilities to pay directly for these services out of funds they do not have."[44] Consequently, Pay Tel argues the *2024 IPCS Order* "will make jails less safe and secure. . . ."[45]

14. These unintended consequences are likely increasing the ongoing implementation challenges. For example, commenters argue that some correctional facilities are "choosing to do business with noncompliant providers, presumably because [they] believe this is their only path to preserving funding for necessary safety and security tools."[46] Even if inaccurate, the very suggestion of such activity only contributes to further contract renegotiation challenges, increasing costs for the parties involved. Other facilities have allegedly reverted to legacy technology to cope with the ramifications of the *2024 IPCS Order*, decisions that carry additional costs. In one such case, Pay Tel ceased service at four smaller facilities on the grounds that the *2024 IPCS Order* rendered service unsustainable. In response, those four facilities failed to contract with a replacement vendor, and "had no other choice but to revert to

---

[38] NCIC Mar. 6, 2025 *Ex Parte* at 5.

[39] Letter from Salvatore Taillefer, Jr., Counsel for the National Sheriffs' Association, to Marlene H. Dortch, Secretary, FCC, WC Docket Nos. 23-62, 12-375, at 2 (filed Jan. 27, 2025).

[40] Securus and Pay Tel Apr. 3, 2025 *Ex Parte* at 3 (citing claims from an Alamance County, North Carolina facility that it lacks "budget authorization" for IPCS expenditures, and claims from the Montana Sheriffs & Peace Officers Association alleging that "local detention facilities will have no choice but to return to pay phones with the option to make a collect call") (citations omitted).

[41] *Id*. at 3 (citing Baxter County Sheriff, *Inmate Phone System Will Not Be In Use After March 30th* (Feb. 2, 2025), https://www.baxtercountysheriff.com/press_view.php?id=2407). Though other parties dispute this claim, evaluation of these arguments is obfuscated by the difficulties of obtaining reliable data from which to accurately estimate used and useful correctional facility costs. *See 2024 IPCS Order*, 39 FCC Rcd at 7738, para. 166; *but see* Wright Petitioners Apr. 10, 2025 *Ex Parte* at 4, Attach. at 10-11 (rejecting the notion that costs lie above the new rate caps). In light of the recognized infirmities of correctional facility cost data, we are reluctant to ignore facilities' purported difficulties, particularly in light of similar reports at other facilities, and without a fuller picture of the costs at hand.

[42] NCIC Mar. 6, 2025 *Ex Parte* at 1.

[43] Securus and Pay Tel Apr. 3, 2025 *Ex Parte* at 2-3.

[44] *See id*. at 5 (arguing that "[a]s a result, many correctional facilities have made the difficult – but Order-required – decision to forgo these services").

[45] *See* Pay Tel July 9, 2024 *Ex Parte* at 3, 6; Securus June 27, 2025 *Ex Parte* at 2.

[46] Securus and Pay Tel Apr. 3, 2025 *Ex Parte* at 5-6 (suggesting that Van Buren County, Michigan, dropped its existing provider in favor of another as a reaction to constraints caused by the *2024 IPCS Order*).

1980s-style supervised public pay telephones for use by the incarcerated population," resulting in additional labor costs from having "a correctional officer . . . stand by while [each] incarcerated person makes a call."[47] These results were not contemplated by the Commission when it adopted the *2024 IPCS Order*, and illustrate how contracting and implementation costs are impacting facilities' implementation of the *Order*, and can ultimately compromise the provision of IPCS.

15. In sum, the myriad implementation challenges that providers and correctional officials face, including the increased costs and elongated timeframes, are further compounded by the contracting difficulties noted above; none of these post-adoption developments were consequences the Commission fully foresaw. And all of these unanticipated circumstances culminate in financial burdens that may threaten continued communications service and or inure to the detriment of facility-provided safety and security measures. Therefore, while the Commission's *2024 IPCS Order* achieved significant reform, we find the record suggests that it unintentionally reduced the financial resources available to correctional facilities, and, in turn, may threaten facilities' ability to implement necessary safety and security measures. We find these consequences qualify as special circumstances warranting a temporary waiver of the compliance deadlines for the Commission's rate cap and site commission reforms.

**B. A Temporary Waiver Will Serve the Public Interest**

16. We also find that a temporary waiver of the deadlines for implementing the rate cap, site commission, and per-minute pricing rules adopted in the *2024 IPCS Order* will serve the public interest. The availability of IPCS brings many "wide-ranging and well-documented benefits" to incarcerated people and their loved ones.[48] However, as the expanded rulemaking record developed in the wake of the *2024 IPCS Order* suggests, the staggered deadlines for complying with the rate cap and site commission rules adopted therein may have the unintended consequence of reducing or eliminating the availability of IPCS at certain correctional facilities. For example, one commenter explains that the Commission's regulatory approach, including the compliance dates for the new rate caps, "introduces the very real possibility of leaving over 2,000 very small jails—and the incarcerated persons residing therein—without any IPCS."[49] Based on the industry's experience with the Commission's new rate caps to date, it appears that some providers have ceased providing IPCS at certain facilities.[50] Similarly, Securus and Pay Tel note that "[a]t least one correctional facility has publicly stated that it is ending access to IPCS because of the [*2024 IPCS Order*]."[51] Together, these developments suggest that an unintended consequence of the Commission's reforms in the *2024 IPCS Order* may be the reduction in access to IPCS, particularly at smaller facilities. Such a result undercuts the recognized benefits for incarcerated people and their loved ones of having IPCS readily available. A temporary waiver will mitigate these unintended consequences

---

[47] *Id*. at 4; *see also* Securus June 27, 2025 *Ex Parte* at 1-2 (asserting that "Pay Tel was forced to cease the provision of IPCS services to four small jails," and that, similarly, "Securus has been forced to end service to three smaller facilities for economic reasons").

[48] *See, e.g.*, *2024 IPCS Order*, 39 FCC Rcd at 7664-66, para. 29.

[49] Pay Tel July 9, 2024 *Ex Parte* at 3; NCIC Mar. 6, 2025 *Ex Parte* at 1 (asserting that the Commission's rate caps "will lead to IPCS providers refusing to bid on high-cost, rural jails"); Securus June 27, 2025 *Ex Parte* at 1 ("Providers are finding it uneconomical to serve some facilities, particularly smaller ones.").

[50] *See* Securus and Pay Tel Apr. 3, 2025 *Ex Parte* at 3-4 (noting that "Pay Tel was forced to cease the provision of IPCS services to four small jails in Arizona and New Mexico that would no longer be financially viable under the 2024 Order").

[51] *Id*. at 3 (citing Baxter County Sheriff, *Inmate Phone System Will Not Be In Use After March 30th* (Feb. 2, 2025), https://www.baxtercountysheriff.com/press_view.php?id=2407). *But see* Wright Petitioners April 10, 2025 *Ex Parte* at 4 (arguing that "claims that facilities will stop providing IPCS due to the rate caps are anecdotal and likely have little to do with the reduction in rate caps"). The Wright Petitioners however have been unable to demonstrate alternative reasons for reports of reduction in IPCS at a number of facilities, and we are therefore unable to overcome the conclusion that the financial difficulties stem from the *2024 IPCS Order*.

while the Commission assesses whether to reconsider these aspects of the *2024 IPCS Order*. Because the actions we take today are, on balance, more likely to preserve the availability of IPCS, even under the higher interim rate caps adopted in the *2021 ICS Order*, we find that a temporary waiver is in the public interest.[52]

17. Additionally, we find that a temporary waiver and extension of compliance deadlines is in the public interest insofar as it will help mitigate possible safety and security risks in connection with IPCS. The Commission has long recognized the importance of public safety in the carceral context, and the need to balance "the laudable goal of making calling services available to inmates at reasonable rates" with "necessary security measures and costs related to those measures."[53] There are arguments in the expanded record that the Commission's treatment of safety and security costs in the *2024 IPCS Order* will reduce the efficacy of those measures, and "lead to abuse of the other incarcerated persons, families, friends, and the public by some users of the calling systems."[54] And, "[i]f faced with offering a discretionary service, that does not include technology to protect the public from users of the service, and that requires additional commitment of personnel and monetary resources—many facilities will make the obvious choice to curtail access to those services."[55] The risk of such degradation of institutional readiness undermines the protection of victims, staff, the public, and incarcerated individuals. By extending the compliance deadlines for the rate cap, site commission, and per-minute pricing rules for a limited time, we lessen the likelihood of such consequences, which, in turn, will benefit incarcerated people and those they communicate with by preserving, to the greatest extent possible, the safety and availability of IPCS. At the same time, this temporary waiver period will allow the Commission to reevaluate these issues and find a long-term solution.

18. In addition to reducing the possibility that IPCS providers and/or correctional facilities might curtail or eliminate access to IPCS, the time-limited waiver we grant today will allow the Commission to develop a more robust record on the issues and proposals it sought comment on in the *2024 IPCS Notice*, including the adoption of permanent rate caps for video IPCS and refinements to the treatment of correctional facility costs for purposes of the Commission's IPCS rate structure.[56] Among other things, a more fulsome record may reduce the opacity of the safety and security costs which facilities must bear, and better identify the core tools that providers, state departments of corrections, and county law enforcement agencies should utilize. The Commission may well want to consider how IPCS regulations can best support market-leading practices in the safety and security space, such as artificial intelligence (AI) and pattern recognition or network-based analysis. The use of advanced AI and machine learning systems capable of near real-time analysis and pattern recognition could bring significant public interest benefits. Developing the record will inform future Commission action on these issues.

19. During the temporary extension of the rate cap, site commission, and per-minute pricing rule compliance deadlines, providers will continue to remain subject to the interim rate cap, site commission, and per-minute pricing rules previously applicable to interstate and international audio

[52] *Rates for Interstate Inmate Calling Services*, WC Docket No. 12-375, Third Report and Order, Order on Reconsideration, and Fifth Further Notice of Proposed Rulemaking, 36 FCC Rcd 9519 (2021) (*2021 ICS Order*).

[53] *See, e.g.*, *2024 IPCS Order*, 39 FCC Rcd at 7841, para. 371 (internal citation and quotations omitted).

[54] Pay Tel July 9, 2024 *Ex Parte* at 3; VARJ July 11, 2024 *Ex Parte* at 2 (noting the importance of safety and security technologies "in improving the safety of . . . facilities, including the safety of incarcerated individuals"); Securus June 27, 2025 *Ex Parte* at 2 (explaining that "Securus has renegotiated contracts with at least 18 customers that lack sufficient financial resources to pay for the suite of safety and security tools they previously relied upon . . . and, accordingly, have elected to move forward with a substantially reduced set of those tools, thus endangering facility and public safety").

[55] Pay Tel July 9, 2024 *Ex Parte* at 3, 16.

[56] *See 2024 IPCS Notice*, 39 FCC Rcd at 7958-65, paras. 608-22.

IPCS.[57] Providers are already well-versed in the requirements of these rules, which should minimize the time and effort needed to comply with them. We do not, however, extend the compliance date for the rule prohibiting ancillary service charges.[58] Because the *2024 IPCS Order* fully prohibited ancillary service charges and eliminated the previous ancillary service charge rules as of November 19, 2024, waiver would leave no safeguards in place on the number nor price of ancillary service charges that providers may assess.[59]

20. Separately, we also temporarily waive the per-minute billing requirements that the Commission adopted in the *2024 IPCS Order*.[60] As Securus demonstrated in seeking its initial waiver of these rules and in requesting an extension of that initial waiver, we find that these technical difficulties in complying with the per-minute billing requirement are likely more widespread because several providers use similar billing practices.[61] As a collaborative and sophisticated provider with resources, scale, and expertise, we expect that the difficulties Securus is facing in transitioning its offerings and the underlying systems to per-minute billing will similarly affect other providers, as demonstrated by the recent waiver granted for TKC on the same issues.[62] A temporary waiver will give the Commission time to reevaluate this requirement.

21. In recognizing the difficulties with implementing the *2024 IPCS Order*'s video IPCS

[57] *See 2021 ICS Order*, 36 FCC Rcd at 9520-21, para. 3; *2015 ICS Order*, 30 FCC Rcd at 12923; 47 CFR § 64.6030 (2021). The interim rates adopted in the *2021 ICS Order* were derived from provider-reported costs that included all safety and security measure costs that providers reported. *See 2021 ICS Order*, 36 FCC Rcd 9709, Appendix E, paras. 8-9 (identifying the information requested by the Commission's Second Mandatory Data Collection, which did not separate or distinguish costs for safety and security measures). By consequence, and on the basis of our findings in this Order, the relief granted in the *TKC Waiver Order* and *Securus Waiver Order* is modified by our actions today by removing the conditions that preclude TKC and its affiliates, or Securus and its affiliates, from charging rates for video IPCS that exceed the video IPCS rates that those providers charged as of the dates of those *Orders*. *See TKC Waiver Order* at 4, para. 9 (conditioning the grant of the waiver on the company charging rates for video IPCS that do not exceed their video IPCS rates in effect as of the date of the waiver order); *Securus Waiver Order* at 5, para. 11 (same). Similarly, the revised compliance deadline set in this Order extends the September 1, 2025 deadline set in the *Securus Waiver Order*. *Id*. at 5, para. 12.

For clarity, we reiterate the audio rate caps as set forth in the *2021 ICS Order* under the Commission's interim rules: providers shall not charge more than $0.21 per minute for interstate audio calling from jails with average daily populations (ADPs) of less than 1,000. 47 CFR § 64.6030(a). For jails with ADPs of 1,000 or more, providers shall not charge more than $0.14 per minute for the provider-related rate component of the audio IPCS rate, and for all prisons, providers shall not charge more than $0.12 per minute for the provider-related component of the audio IPCS rate. 47 CFR § 64.6030(b)–(c). Additionally, we remind providers that this waiver temporarily reinstates the legally mandated and contractually prescribed site commission rate cap rules adopted in the Commission's *2021 ICS Order*. *See 2021 ICS Order*, 36 FCC Rcd at 9561-64, paras. 100-01, 103; 47 CFR § 64.6030(d). Finally, we note that intrastate audio IPCS and video IPCS were not subject to the *2021 ICS Order*'s interim rate caps.

[58] *See* 47 CFR § 64.6020.

[59] We further note that the total cost per minute for the entire industry to offer these services was relatively minor. *See 2024 IPCS Order*, 39 FCC Rcd at 8044, Appx. F, Tbl. 11 (showing that the total industry cost to provide the five previously permissible ancillary service charges was approximately $01.1 per minute).

[60] 47 CFR §§ 64.6010(a), (c), 64.6080. This aspect of the waiver applies only to video IPCS and intrastate audio IPCS.

[61] *See* Securus June 23, 2025 *Ex Parte* (demonstrating progress towards complying with the Commission's per-minute billing rules for video IPCS but noting additional time is needed). *See generally Securus Waiver Order*; *see also* Securus Waiver Petition.

[62] *See TKC Waiver Order*.

rules,[63] we are persuaded that a temporary waiver of the interim video IPCS rate cap compliance deadlines and the per-minute charge rule for video IPCS is in the public interest.[64] While attempting to deploy video IPCS at all of the nation's carceral facilities, providers may encounter difficulties that can be exacerbated by financial hardship if the interim rate caps are below their cost of service.[65] Given video IPCS's status as a nascent service, we find that a temporary waiver of the interim rate caps for video IPCS and site commission rules may better position providers to develop and expand their video IPCS as the market grows and develops in the short run, while the Commission prepares to move towards establishing permanent rate caps for these IPCS offerings, and/or seeks further comment in light of the expanded record. In addition, the Commission has sought to further develop the record on providers' costs for the smallest jails and facility costs in allowing access to IPCS, indicating potential future action.[66] A more robust record will inform future Commission action on this issue.

22. Accordingly, we waive the deadlines for any applicable interim rate caps, site commission, and per-minute pricing rules for the provision of video IPCS unless or until April 1, 2027 or any alternative date the Commission sets as part of further action in this proceeding.[67]

## IV. ORDERING CLAUSES

23. Accordingly, IT IS ORDERED, pursuant to the authority contained in sections 1, 2, 4(i)-(j), 201(b), 218, 220, 276, 403, and 716 of the Communications Act of 1934, as amended, 47 U.S.C. §§ 151, 152, 154(i)-(j), 201(b), 218, 220, 225, 255, 276, 403, and 617, sections 0.91, 0.291, and 1.3 of the Commission's rules, 47 CFR §§ 0.91, 0.291, and 1.3, and the Martha Wright-Reed Just and Reasonable Communications Act of 2022, Pub. L. No. 117-338, 136 Stat. 6156 (2022), that this Order in WC Docket Nos. 23-62 and 12-375 IS ADOPTED and that sections 64.6010, 64.6015, and 64.6080 of the Commission's rules, 47 CFR §§ 64.6010, 64.6015, and 64.6080, ARE WAIVED to the extent specified in this Order until April 1, 2027 or any alternative date the Commission sets as part of further action in this proceeding.

24. Accordingly, IT IS FURTHER ORDERED, pursuant to the authority contained in sections 1, 2, 4(i)-(j), 201(b), 218, 220, 276, 403, and 716 of the Communications Act of 1934, as amended, 47 U.S.C. §§ 151, 152, 154(i)-(j), 201(b), 218, 220, 276, 403, and 617, sections 0.91, 0.291, 1.3, and 1.113 of the Commission's rules, 47 CFR §§ 0.91, 0.291, 1.3, and 1.113, and the Martha Wright-Reed Just and Reasonable Communications Act of 2022, Pub. L. No. 117-338, 136 Stat. 6156 (2022), that the relief and associated conditions adopted in the *TKC Waiver Order*, *Incarcerated People's Communications Services; Implementation of the Martha Wright-Reed Act; Rates for Interstate Inmate Calling Services*, WC Docket Nos. 23-62, 12-375, Order, DA 25-515 (WCB June 13, 2025) and the *Securus Waiver Order*, *Incarcerated People's Communications Services; Implementation of the Martha*

---

[63] *See* Securus and Pay Tel Apr. 3, 2025 *Ex Parte* at 3 (stating that as one of the larger, more sophisticated IPCS providers, "Securus lacked the technical ability to comply with the 2024 Order's per-minute billing requirement for video services"); *see also* TKC Waiver Petition; Talton Waiver Petition. While only three providers have sought waivers for the Commission's video IPCS rules, we believe that this waiver may broadly encourage a more responsive and faster deployment of these services across the industry.

[64] 47 CFR §§ 64.6010(a), (c), 64.6080.

[65] *See* NCIC July 10, 2024 *Ex Parte* at 2-3 (acknowledging that despite the nascent status of video IPCS, several providers face rates "below the reported costs of IPCS providers.").

[66] *2024 IPCS Notice*, 39 FCC Rcd at 7958-60, 7963-64, paras. 608 (recognizing that the record was not sufficient nor was the data sufficiently reliable enough for the Commission to set permanent rate caps and seeking comment on establishing permanent video IPCS rate caps), 612, 621.

[67] *See id*. at 7747-48, para. 183 (establishing interim video IPCS rate caps); *see also id*. at 7958-60, paras. 608-611 (seeking comment on establishing permanent video IPCS rates and conducting a future data collection).

*Wright-Reed Act; Rates for Interstate Inmate Calling Services*, WC Docket Nos. 23-62 and 12-375, Order, DA 24-1277 (WCB Dec. 19, 2024) ARE MODIFIED to the extent specified in this Order.

25. IT IS FURTHER ORDERED, that pursuant to section 1.102(b)(1) of the Commission's rules, 47 CFR § 1.102(b)(1), this Order SHALL BE EFFECTIVE upon release.

FEDERAL COMMUNICATIONS COMMISSION

Joseph S. Calascione
Chief
Wireline Competition Bureau